The first case is a consolidated case, Sage Information v. Humm, and we have Watkins, Ritchey, Headland, Minor, Reading, and Berry. And for the appellant, we have Mr. Craven, and for the appellee, we have Mr. Schor. Good morning. May I please support counsel Don Craven on behalf of the plaintiff's appellants in this matter. These cases deal with two separate FOIA requests to public officials in Franklin County for similar but not identical databases of electronically stored public records. Public records, and one of the issues in this case is the broad definition of public records in the Freedom of Information Act, which encompasses any records prepared by, used by, possessed by, prepared for public officials in the course of their duties. And in 2010, the legislature added to that definition, including any records maintained by third parties under contract with the public body for the purpose of preserving or storing those records. That's an important addition in this case because both the treasurer and the supervisor of assessments through Franklin County have a contract with a company called DevNet to maintain and store these databases. The requests to the treasurer and the assessor are similar, but they're not identical. They both request tax assessment data at different times in the process. The assessor collects the, for lack of a better term, the raw assessment data, size of the lot, size of the house, number of bedrooms, number of water spigots, those sorts of, that type of information. To that information is added levy information from the clerk, and then ultimately it adds up with the treasurer who determines the amount of tax to be paid on those parcels based on the combination of that information. We've asked for, we submitted FOIA requests for those databases both at the assessor's office, the raw assessment data, and at the treasurer's office for the final product. Let's start with the treasurer. The treasurer admits he has access to this data, admits that he regularly uses the data to do his job. It's clearly a public record under the Freedom of Information Act. The issue raised by the treasurer in this case is, does the language in the property tax code, which allows for a reasonable fee, apply, or does the language in Section 6A of the FOIA, as amended in 2010, apply? The property tax code applies only by its terms to assessment officials, chief assessment officials. It does not apply to county treasurers. It allows, according to the assessor's argument, it allows the assessor to charge a reasonable fee for this information. There is no such permission for the treasurer under the property tax code. That leaves us with the language in the Freedom of Information Act, which requires, which limits the fee under 6A to the charge of the recording media. What's it cost to transmit this data to a requester, be it a disk, be it email, be it however that is going to be transmitted? In 2010, the General Assembly split the fee provisions, the cost provisions, in the Freedom of Information Act to distinguish between the much more cost-efficient method, the electronic distribution of data, from the traditional paper costs. And in 6A, limits the fees to the actual cost of purchasing the recording medium, whereas in 6B, the fees are for paper records, 50 pages for free, and then shall not exceed 15 cents per page. A per unit cost in that case makes sense, because we're spending paper, we're spending toner, we're spending all of those things, whereas in the electronic format, we're not consuming those sorts of tangible goods. There's also a significant difference between 6A and 6B, because in 6A, the General Assembly eliminated the first phrase, which had been prefatory to both fees in old Section 6. The General Assembly eliminated the phrase, except when a fee is otherwise provided by statute, each public body may charge, etc. In a paper format. In this case, the treasurer is limited to the cost of the medium, because the statute, which he relies on, the property tax code, does not apply a FOIA limit to his fees. As to the assessment, again, it is conceded that these are public records. She has access to them, she uses them in her work, and again, we are faced with the issue, we are directly faced in this case, with the issue of whether the property tax code or the provisions of the Freedom of Information Act apply. There are cases decided previous to the enactment of amendments to the Freedom of Information Act of 2010, which allowed, under that prefatory language, except when a fee is otherwise fixed by statute. The King and Henderson cases, DuPage and Grundy County cases, respectively, allowed the supervisor of assessments to use the language of the property tax code to assess a reasonable fee, or at least raise the question of what's a reasonable fee. In, as I said, 2010, as to electronic records, that language has been removed, and King and Henderson fall in light of that language. The relatively clear legislative purpose was to provide and encourage distribution of records in electronic format at the minimal fees of the cost of reproduction of the disks. If the property tax code applies, as the trial court found in this case, we're then faced with the factual issue of what's a reasonable fee. Under 9-20 of the property tax code, the language is a reasonable fee. But there's no standard fee, right? It's a reasonable fee. There's no standard. It's a reasonable fee. One county up north could charge $0.10, and one county down south could charge $0.50. And if the trial court finds that there's sufficient evidence to support either of those, that's a reasonable fee. Let me ask you with respect to Dullo. He claimed that he didn't have the information in his possession, and he didn't have the ability to provide paper. He had only the ability to provide paper copies, right? That's what he claimed. You have facts that dispute that. Under the DevNet, in the assessor's testimony, same software provider, there is a protocol for providing electronic records. Same software provider, same bucket of information, if you will. Different times in the process, but the same bucket of information maintained by the same software provider. But on the question of a reasonable fee, the thought that a per parcel fee is imposed in electronic records, we're not talking about people having to make copies of cards. We're talking about the storage of electronic data. And what we have here is a request by the assessor for a fee of $3,200 an hour as a reasonable fee for the provision of public records as required by law. If I were standing here asking you for $3,200 an hour for attorney's fees, I think Mr. Swofford would find himself in a slightly different posture than saying that $3,200 is a reasonable fee to push a button to copy records onto a disk and send them to a requester. The evidence in this case was a survey admitted with the testimony of the assessor, in which the assessor lists comparable costs. It cost, you know, Kendall County is $0.10, as your Honor indicated. There's a variety of fees ranging from free to $0.20. We don't know when that survey was done. We don't know who did that survey. We don't know what questions were asked. And we don't know, it appears from looking at that survey that some of the questions were asked before the new FOIA was in place and some were asked after. Some counties had none, right? The testimony of my client submitted by affidavit, there was some timing and health travel issues. My client submitted an affidavit without objection that 67 counties, actual performance of 67 counties, no fee other than the cost of the disk or email is free. So more than half of the counties in the state, if we're simply going to weigh comparable costs, the record in this case is that more than half of the counties in the state, the records are free. That's not really relevant, is it? We're not comparing. Each county gets to do what they want to do, right? But it has to be a reasonable fee. A reasonable fee. This was $1,690, which was half of what was charged in SAGE. And I know SAGE was before the old version of the Freedom of Information Act, but it's still half of what SAGE. But the only evidence the court relied on were those comparable fees. Finding some weight in those comparable fees, but paying no attention to the comparable lack of fees in those 67 counties. There's no evidence in this record, other than it takes less than 30 minutes. There's no evidence in this record to support a fee. There's no additional overhead. There's no additional staff time other than that half an hour. Everything else that both of these offices do would be done anyway. All of the contracts would be the same with the software providers. And what the court found in this case, very reminiscent of the Wayne County case involving the application of exemptions in the Freedom of Information Act. The judge here, Judge Wong, found that he couldn't find this to be an unreasonable fee. It's not my burden to prove that the fee is unreasonable. It is the assessor's burden to prove, assuming that the property tax code applies at all, it's the assessor's burden to prove that this is a reasonable fee. And all we have here are what other counties charge, or don't charge, and it takes me half an hour. And with due respect to Judge Wong, who, irony of ironies, was the state's attorney in Wayne County oh so long ago, he flipped the burden. He imposed a burden on me to prove that this was somehow an unreasonable fee. And that's not the burden under the property tax code. The other problem under the property tax code, unlike the Freedom of Information Act, is the property tax code doesn't expressly create a cause of action. It doesn't say, all it says is, upon request, you can charge a reasonable fee. It doesn't expressly create a cause of action, as does the Freedom of Information Act, for a cause of action against the assessor to produce the records. It doesn't expressly authorize an injunction, as does the Freedom of Information Act, to compel the assessor to produce the records if they're not produced pursuant to request. The Freedom of Information Act, which the General Assembly calls the exclusive statute for access to public records in Illinois, does create that cause of action, does allow for an injunction, does allow for other relief. And in our view, should be seen as, what it says it is, the exclusive method for access to public records in Illinois. So, the property tax code fails to provide that cause of action, unlike the Freedom of Information Act. What was the basis of the court's finding that the records were not in the possession of Mr. Gulley? I don't recall any specific factual findings other than Mr. Gulley clearly testified that he had access to them, that he accessed those records regularly to do his work, and that those records were necessary. He works in the courthouse. He can walk down to Hum's office. He has access to the database. I think what Mr. Gulley testified was that if he were going to produce these records, he would have to produce them page by page. But his contractor, DevNet, has access to the database from beginning to end. And under the provisions of the Freedom of Information Act as amended in 2010, the records that are in the hands of a third-party contractor are likewise public records subject to disclosure under the Act. In the absence of any other questions? Thank you. I have an opportunity to call Dr. Swofford. Thank you. May it please the court, counsel, I'm Stephen Swofford, representing the County of Franklin, representing Cynthia Hum as Supervisor of Assessments and John Gulley as Treasurer. Our view is that this is a case of statutory construction. You have the Freedom of Information Act, and you have the terms of Section 9-20 of the tax code. The law in this state is very clear, as it has been for years and years, that the more specific statute will control over the more general statute. And it is our position that Section 9-20 controls the outcome of this case. That is, that the Supervisor of Assessments is entitled to charge a reasonable fee. And you're right, Your Honor, that it doesn't define reasonable. But as we know, the courts have, in various litigation, examined what is reasonable, what is not reasonable. In this case, Cindy Hum offered evidence in three regards. One, a market survey that was done by the Supervisor of Assessments Association to show what other counties charge, to show what the fees in the marketplace have been during a period of time. Number two, the finding of the same case where an appellate court previously approved 10 cents per parcel as a reasonable fee. Number three, there was evidence concerning the cost to accumulate, maintain, and preserve the data being requested, i.e., a cost basis also for part of the charge. So on those three bases, we believe, we clearly showed that the 5 cents per parcel fee was a reasonable fee. We disagree that Judge Vaughn flipped the burden of proof. His oral statement may have been less than artful, but the fact is he had a clear basis on which to decide the reasonableness of the fee based upon the evidence brought forth by Assessor Hum. Is there anything in the record that would support that Hum had charged this same fee for a prior request, or was this her first time having this request? This is the first, to my knowledge, that we've addressed this issue. And is that in the record, that this is her first time? As far as I, yes, that's right. And it took only one half hour. Well, there's more to it than what it costs to simply reproduce the record. In terms of reasonableness, you also have considerable costs in the contract to maintain these records. I mean, that's charging thousands of dollars a year for this computer program for the data entry that goes into it. And on a cost basis, there's a lot of cost involved other than simply the cost of reproduction. And if you look at the property tax code, property tax code does not limit fee to the cost of reproduction. So what I'm trying to say is that there were several bases on which she could have based the reasonableness of the fee. We are not denying that these are public records. But what we are saying is that these are public records subject to the tax code. Now, in looking at the argument concerning Mr. Gulley, plaintiff says, well, he has, quote, access to these same records. The contract to accumulate and maintain these records is between Cindy Hunt and the Supervisor of the Assessment Office and Devin. Mr. Gulley has the opportunity in the course of his duty, he looks at them, he reviews those documents, he then determines a tax rate and plugs that information into the previous existing database. But the contract isn't with him, it's with her. She's who accumulates all of this information. She's who is responsible for seeing that it is maintained and provided to the other office holders. The information is in her care, custody, and control, not Mr. Gulley's. The only thing Gulley really has control over is the numbers of here's how many dollars in taxes you have to pay. And for that reason, we believe the court was correct in determining that he was not under FOIA required to produce these records. However, even if he were required under FOIA to produce these records, we have an issue of what's in the record about his ability to do this. In his reply brief, counsel for plaintiffs says, well, we gave him this program with DevNet that would have allowed him to do that. But that's nowhere in the trial record in this case. First time I see that is when I read his brief. The only testimony from John Gulley is I don't have the ability to have those things printed out or put onto electronic medium in the format requested. Because that relationship is between Cynthia Hung and DevNet, not between John Gulley. Mr. Gulley says within his possession and control, he can produce a paper document that he maintains. And when he's statutorily required to maintain a tax book, which is a paper document, and they can produce you a copy of that, and we have you to do so on the basis of a reasonable fee for the reproduction of the paper copies. We simply suggest to the court, and I give counsel credit, that he's attempting to bypass the provisions of the tax code by trying to get this information maintained by the supervisor of assessments by requesting it from the treasurer. But the facts are that the supervisor of assessments is who accumulates, maintains, and controls the information being sought. And because of that, the defendant's, or the plaintiff's, request is governed under section 90-20 of the tax code. And we believe that as a matter of law, this court should uphold the judgment of Judge Long. Thank you, counsel. Thank you. Mr. Franny. With respect to the treasurer, Mr. Gulley, attached to the FOIA request, which is attached to the complaint in this case, is a file transfer routine developed by DevNet. DevNet is a software provider. It's a company that provides these services to assessors and treasurers and county officials across the state. Attached to our request to Mr. Gulley is the file transfer routine developed by DevNet for county treasurers. He has access to, he views, he uses this data, and the software provider has developed a file transfer routine specifically for county treasurers. With respect to, this is hung, page 19 of the transcript, 18 and 19-20, the software contracts with DevNet, and there's another software provider, she admits that those would be entered into whether she ever got a FOIA request or not. Yes. And there's no extra cost to the county if you get a FOIA request, other than, her testimony is, other than the price of burning a compact disk if someone requires that. That's it. That's the evidence of, that supports the reasonable fee. The costs for DevNet and the software provider are going to be there simply for these county officials to do their statutory duties, regardless of whether they get a FOIA request or not. The cost incurred to the county is a half an hour. Do you agree that this was her first opportunity to apply the statute to a request like this? I think the evidence was that there had been one previous request, but that was before the change in FOIA. So yes, I believe this was her first, this was the first post-2010 request. And again, in the absence of questions, I believe that summarizes the court's position. Thank you both for your recent arguments, and I apologize, I misspoke, because it's the next case that's consolidated, yours was not consolidated. I apologize. And we will take the matter into advisement. The issue is history.